**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES, | § | |
| | § | |
| v. | § | Cr. No. C-08-199 |
| | § | |
| JUAN CRUZ MARTINEZ. | § | |

**ORDER DENYING MOTION FOR NEW TRIAL**

Pending before the Court is Defendant Juan Cruz Martinez's motion for new trial (D.E. 21), to which the United States has responded. (D.E. 53.) On September 26, 2008, the Court held a hearing to address the motion and heard argument from counsel for both parties. For the reasons set forth at the conclusion of that hearing, and for the reasons set forth in more detail herein, Martinez's motion is DENIED.

**I. BACKGROUND**

On April 9, 2008, Martinez was charged in a two-count indictment with possession with intent to distribute approximately 1.99 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) ("Count One") and possession with intent to distribute approximately 64.09 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) ("Count Two"). He pleaded not guilty and proceeded to trial on July 11 and 12, 2008. On the second and final day of trial, the jury gave its verdict, finding Martinez guilty of both counts.

Martinez filed a Notice of Appeal shortly thereafter (D.E. 30), as well as a motion for reconsideration and a motion for new trial. (D.E. 20, 21.) On September 8, 2008, the case was called for sentencing. The Court first addressed the motion for reconsideration, including hearing argument on that motion. In his motion for reconsideration, Martinez argued that there was

insufficient evidence to support his conviction. The Court denied that motion for reconsideration. The Court sentenced him to 115 months in the custody of the Bureau of Prisons on each count, to run concurrent, to be followed by five-year terms of supervised release, also to run concurrent, and also imposed a $100 special assessment on each count. (D.E. 48, 50.)

Because the government had previously been given additional time to respond to the motion for new trial, the Court set the motion for new trial for a hearing on September 26, 2008. The hearing was held and attorneys for both parties presented argument to the Court.

## II.  ANALYSIS

### A.  Arguments of Parties

In his brief motion, Martinez argues that AUSA Salinas Patterson improperly commented on Martinez's post-<u>Miranda</u> statements during the government's closing arguments. He argues that the "manifest intent" of the prosecutor's remarks was to comment on the defendant's silence and that the character of the remarks would lead the jury naturally and necessarily to construe the AUSA's statements as a comment on the defendant's silence. He thus claims that he is entitled to a new trial. He cites to two cases in support of his motion: <u>Untied States v. Moreno</u>, 185 F.3d 465 (5th Cir. 1999) and <u>United States v. Laury</u>, 985 F.2d 1293 (5th Cir. 1993). Notably, however, while both of those cases conclude that an error occurred, neither held that a reversal of the conviction was required or that a new trial should have been granted.

In its response, the United States neither denies or admits that the AUSA's comments in closing were an impermissible comment on the defendant's silence. Rather, it focuses more on a prejudice-type inquiry. That is, the United States argues that, even if the Court finds that the government impermissibly commented on Martinez's silence, that comment did not render the

results of the trial manifestly unjust or affect the fairness, integrity or public reputation of the judicial proceedings.  In particular, the government contends that the other evidence against the defendant was so strong that failure to correct the alleged error would not result in a manifest miscarriage of justice.  The government cites to only one case in its response, <u>United States v. Garcia-Flores</u>, 246 F.3d 451 (5th Cir. 2001).

     At the trial in this matter, the contested element of the offense was whether Martinez had knowledge of the drugs found in his trailer.  The statements Martinez challenges were made by AUSA Salinas Patterson near the end of her closing argument.  First, as pointed out by defense counsel at the hearing, the AUSA stated near the conclusion of her argument:  "What's the most telling piece of evidence or evidence that we have that tells about his knowledge, and I submit to you that that evidence is what happens when the defendant gets to the checkpoint."  (D.E. 39, Transcript of Closing Arguments, at 19.)  The AUSA then discusses the statements that were made when Martinez was stopped at the checkpoint for a routine inspection, which included his statements that he had "just picked up the tractor and trailer in Edinburg this morning," a statement that conflicted with other evidence in the case that he had the tractor and trailer with him the day before when he picked up produce at Cold Loop Produce.  She then referenced that the Border Patrol Agent said he seemed flustered, and that Martinez also failed to answer a question about whether the tractor belonged to him, instead looking for paperwork to hand the agent.  (D.E. 39 at 19-20.)

     The AUSA then went on to argue to the jury about Martinez's post-<u>Miranda</u> comments.  This portion of her argument is worth recounting in some detail, since it is the basis for the new trial motion:

> Now, they send him to the secondary inspection area, the drugs are
> found, and the Border Patrol agents give him his Miranda rights and

3

he agrees to make a statement and he says, "I don't know anything, I don't know anything about any of the drugs," and **that's what he chooses to say and that's all he says. And you have to ask yourself, is that what a reasonable person faced with these circumstances would say and choose only to say?** The Drug Enforcement Administration comes out, again gives him his Miranda rights, talks, and gives him his Miranda rights, and Agent Ramirez says, "Well, before I even asked a question he said, 'Hey, the tractor is mine.'" And Agent Ramirez is there, "Okay." And he says that he had just picked up the tractor and trailer about 4:00 o'clock this morning from the Flying J Truck Stop at Edinburg, and Agent Ramirez goes, "Okay." And he said, "Well, how did your tractor and trailer get to the Flying J in Edinburg this morning," and the defendant answers, "I don't know because different drivers operate my tractor and trailer." **And that was the extent of what he wanted to say, of what he said. He didn't say who those were or a name, a phone number, didn't elaborate. And again, you have to be thinking, is that reasonable, is that reasonable that someone who didn't know what was on the tractor and trailer would say at that time when someone is accusing you of transporting narcotics? And yet he chose only to make that statement. And, again, it's reason, it's what your reason and your common sense tells you. Would you think that someone might be saying, "Why that no good so-and-so driver, let me tell you about him"? Didn't hear that. So again, I ask you to use your reason and your common sense.** And, again, there's nothing in the defendant's possession, nothing in his tractor to suggest that there's anyone else who is picking up loads or who is hauling this tractor or this trailer. Everything that's in that tractor belongs to the defendant. And, you know, there's no doubt that perhaps there's others involved because it is heavy produce, it does require the use of a forklift to move the produce around, but the defendant is the only one at this time who is indicted and is here before you to ask you to use your reason and your common sense. **And we submit to you that all the evidence points towards knowledge, because you have to ask yourself is it reasonable, what happened, what was said, is it reasonable that he would not know, and I submit to you that it does prove towards his knowledge** and I ask you to find the defendant guilty as charged in Count 1 and Count 2 of the indictment. Thank you.

(D.E. 39 at 20-22 (emphasis added).)

In the quoted portion of her argument, the AUSA invites the jury to question whether it was

reasonable of Martinez not to offer more information in his post-Miranda statements and whether a person who truly had no knowledge of the marijuana would have failed to offer more information. Defense counsel did not object at the time the statements were made.

**B.    Legal Authority and Analysis**

    **1.    Motions for New Trial Generally**

Rule 33 of the Federal Rules of Criminal Procedure provides that the court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[T]he interest of justice standard 'requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial.'" United States v. Wall, 389 F.3d 457, 466 (5th Cir. 2004) (internal citation omitted). "Generally . . . the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." Id.

    **2.    Claim of Doyle Error**

A Doyle error occurs where the government uses a defendant's post-arrest, post-Miranda silence to create an inference of guilt. See Doyle v. Ohio, 426 U.S. 610 (1976) (discussed in Garcia-Flores, 246 F.3d at 455-56). As noted, the primary case relied upon by the government is United States v. Garcia-Flores, 246 F.3d 451 (5th Cir. 2001). In that case, the defendant was a truck driver who was stopped at a checkpoint and charged with possession with intent to distribute over one hundred kilograms of marijuana. Although the defendant did not testify at trial, the theory advanced by his counsel was that defendant did not have knowledge of the marijuana. Additionally, the defendant's wife testified at trial that she had received a telephone call the night before defendant was arrested from a man named Ramon, who instructed Garcia-Flores to pick up a trailer at a certain

location in Laredo.

During Garcia-Flores' trial, the prosecutor elicited testimony from a DEA agent that questioned Garcia–Flores after he had been read his Miranda rights. The agent testified that Garcia-Flores said he had picked up the trailer from "the man" and that when the agent asked him "what man," Garcia-Flores said he wanted an attorney. The agent testified that he had asked Garcia-Flores for a name and description and was never given one. Garcia-Flores also challenged the portion of the prosecutor's closing argument in which he referenced the fact that Garcia-Flores did not mention "Ramon" at the checkpoint and that, if Garcia-Flores had not known about the marijuana being in the trailer, he would have given additional details and mentioned Ramon's telephone call.

The Fifth Circuit concluded that a Doyle violation had occurred in this instance: "Clearly the intent of the government in its closing statement was to create an inference from Garcia-Flores' refusal to accurately describe the man." 246 F.3d at 457. Nonetheless, the Fifth Circuit chose not to correct the error on appeal, reasoning as follows:

> [I]n light of the strength of the government's remaining evidence and the limited context in which the violation occurred, we do not think that failure to correct the error will result in a manifest miscarriage of justice or will affect the fairness, integrity, or public reputation of judicial proceedings.

246 F.3d at 457. As noted, the government in the instant case contends that Garcia-Flores controls and that, even if a Doyle error occurred, it did not result in a manifest injustice because the other evidence against Martinez was so compelling.

In a much more recent case, the Fifth Circuit undertook a review of its jurisprudence on the issue of Doyle errors and pointed out various inconsistencies. See United States v. Fambro, 526 F.3d 836 (5th Cir. 2008). It specifically pointed to Garcia-Flores as being inconsistent with other

authority, although in a way *favorable* to the government as applied in this case. Specifically, the Fambro case seems to question whether a Doyle error even occurred in Garcia-Flores.

In both Fambro and Garcia-Flores, as in the instant case, the defendant was given his Miranda rights, then made some statements (or answered some questions), and then stopped making statements and answering questions. In Fambro, the Court concluded that, on the facts before it, the defendant clearly waived his rights by answering certain questions after being read his Miranda rights. Thus, it was not a Doyle error for the prosecutor to comment on the questions that the defendant refused to answer, primarily because the defendant had answered some questions and therefore waived his Miranda rights.

This is in conflict with some other Fifth Circuit authority, including Garcia-Flores, and that conflict was noted in Fambro. As noted, the Garcia-Flores court held that a Doyle error occurred even where a defendant had initially made some post-Miranda statements. In Fambro, the Fifth Circuit did not attempt to resolve the conflicts in the cases or the uncertainty on this issue, but instead concluded as follows:

> We conclude that we are bound by this court's en banc decision in United States v. Beechum, [582 F.2d 898 (5th Cir. 1978)]. That decision and others discussed above indicated that there was no Doyle violation in this case. To the extent that other decisions of this court might compel a different conclusion, they indicate only that the law in this areas is not clear. As the Supreme Court has said, "[a]t a minimum, court[s] of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." There was no plain Doyle error in this case.

526 F.3d at 847. Because there was no objection at trial, the record was being reviewed only for "plain error" and the error was not plain, according to the Fambro court. Therefore, no reversal was required.

7

In light of the conflicted and confusing state of the Fifth Circuit authority on the issue, it is difficult to determine whether a Doyle error occurred in the instant case. Certainly, the Court finds that the AUSA's comments, which did invite the jury to draw inferences from the defendant's failure to provide detailed statements post-Miranda, were ill-conceived. As noted at the hearing, however, the Court also does not find that the prosecutor's comments were calculated to do something improper. Moreover, if the Court were to follow the Fambro court's reasoning, it would probably not find a Doyle error. In any event, the Court concludes that it need not resolve the difficult issue of whether a Doyle error occurred in this case. Instead, the Court concludes that, even if there was a Doyle error, it did not reach the level required to grant a new trial.

This Court was present throughout the trial and had the opportunity to observe the demeanor of the witnesses and the presentation of the evidence. The Court has also reviewed the trial transcripts in ruling on this motion. The evidence against Martinez on the issue of knowledge was circumstantial, but was strong. If there was a Doyle error, it did not constitute a "miscarriage of justice," nor does the weight of the evidence preponderate against the verdict. See Wall, supra. Accordingly, the Court concludes that, due to the strength of the government's other evidence against Martinez, and consistent with Garcia-Flores, a new trial is not warranted. Even if a Doyle violation occurred, it was extremely similar to the violation in Garcia-Flores, in that there was sufficiently strong evidence of guilt against Martinez, such that his conviction was very likely even without the prosecutor's statements.

### III.  CONCLUSION

For the foregoing reasons, and the reasons set forth by the Court at the conclusion of the September 26, 2008 hearing, the Court DENIES Martinez's motion for new trial. (D.E. 21.)

It is ORDERED this 30th day of September, 2008.

_____
Janis Graham Jack
United States District Judge